Shihadeh, Owner, Businesses, Creative Designs, Kitchens, Baths, Defendants, Athletes, Lawyers, and Defendants. Counsel, you're both ready to proceed? Yes.  Okay, please report. My name is Brian Sims. I'm here on behalf of my client, Vanguard Energy Services, LLC. Vanguard sells natural gas to industrial and commercial clients. Basically, people who have businesses who need to buy quantities of natural gas and wish to do so from someone other than utility. In this case, revolves around an agreement by the defendant to purchase... This was a verbal agreement, correct? It was a verbal agreement. No written agreement. That is correct. When you're talking about a lack of a writing, you can make an exception if you have a merchant exception. That is correct. It seems like that's where the crux of the question is here. We can limit it. I don't mean to cut you off, but we know the facts of the case. I'm going to limit it to that merchant exception. How is it that Vanguard, that Mr. I don't know, Abraham or the Creative Kitchen Supplies, how do they fall in that merchant exception? If we look at the definition of merchant in 2-104, it's defined in subparagraph one of that. It defines... There are actually several different ways you can qualify as a merchant here. One is if you're a person who deals in the goods of the kind that's part of the transaction. Now... That wouldn't be here. That is not the case here. Okay. Though I would point out one of the cases that the defendant relies upon, the forms world, really turns upon that and says, because the bank doesn't sell this stuff, it's not a merchant. If we look beyond that, then it says or, and there are other options for becoming a merchant with specific relevance to this case. It involves knowledge or skill particular to the practices involved in the transaction. If we look at the comment and particular comment, the second paragraph of comment number two to this provision, it talks about the fact that anyone who's involved in business can be treated as a merchant for the purpose of engaging in business correspondence, basically exchanging a memorandum. Well, if that were the case, and I think where you're going is if that applies here, then everybody's a merchant. Everybody's a merchant for the purpose of exchanging business correspondence. There are other exceptions to which the merchant rule applies that wouldn't involve something like that, such as the exchanging of business correspondence. But doesn't it say that, quote, knowledge or skill particular to the practices or goods involved in the transaction? Right. The bathroom place wasn't involved in selling gas or utilities, is it? No, but it was involved in exchanging information about that via email, in this case in particular. In fact, if you look at the exhibits which constitute the written confirmations, in this case exhibits three and four to the complaint, you'll see that the confirmation is part of an ongoing conversation between the plaintiff and the defendant with respect to natural gas purchases. And in fact, also electric purchases, but Mike Hunter was the provider of those electric services. So distinguish for me the Forms World case, then. How is this case different than that when Magna Bank wasn't deemed a merchant? I think if you look at the Forms World, Forms World only focused on the question of is the client a user of this product or is it a resaler of this product? And I would submit that the statute is much broader than that and is intended to be interpreted much broader than that, as is set forth in the comment. In fact, if that were all we were looking at, the statute could end before the or even appears in that first sentence. Merchant means a person who deals in goods of the coming. We can stop there, but it goes on. So the focus of the statute is not are you somebody who resells or sells this good. That's one way you can be a merchant, but there are other ways. But isn't he an end user? I mean, aren't they just an end user of this product? Well, but the focus isn't on the product itself. The focus is on the written confirmation exception, which looks at more than just an expertise in the particular good that is being sold. And here the focus is not does the defendant understand natural gas markets, how natural gas works, how you buy natural gas in the futures market. That's not the question. The question is, does the defendant understand when he receives a correspondence, an email in this case, from somebody who's selling him something, a vendor that says, here is what we ordered for you at a fixed price for the following two winters. Is he, as somebody engaged in business, sufficiently sophisticated to understand that simple situation? I would submit that he would, and that the UCC would support that conclusion. Why is it that you talk about you could end the section after the goods of the kind, but your reading of it kind of takes out the practices or goods involved in the transaction, because you're just saying that we're talking about the practices involved in the transaction of sending an email, the practice of sending an email. So, realistically, you are a merchant when it comes to emails. Anything you purchase, as long as it involves emails, you're a merchant. As long as it involves myself and my business capacity, yes. I, and every other business person in this state, I would submit that. Why is it that you're in your business capacity? What does it say there? It says that at the end of the comment. What do you have about the fishing gear? Yes. Okay. But, again, if you're, I know the comments say that, but we don't really look at the comments. We look at the statute first, comments second. I understand. I mean, if we're looking at the statute first and just the language of the statute, and then, and you want to expand practices to meet the sending of mail or email, why does it matter whether it's a personal purchase or not, as long as I know about sending emails? I would submit that the first line where it talks about being a merchant, 2-104, specifically applies to a person and his occupation. So I would say that limits it to your occupational situation, your work situation. And with respect to the comments you sort of started with in terms of the practices or goods, I would point out that there's an or between practices or goods. So knowledge of practices in and of itself is sufficient, as is knowledge of goods. You don't need both. It is an or, not an and, with respect to that. How about, I'm sorry, are you through? I don't need that. Well, but the practices involve in the transaction. So, again, what you're talking about is I could be buying anything from, you know, a new car to an elephant, and the practices involved in the transaction have to do with, forget about the goods, the practices involved in the transaction have nothing to do with the goods or the industry or anything. It just has to do with sending an email. Right. It has to do with that action that occurred. In this case, it was an email. It could be a letter. In some of the cases, it's a fax. So your knowledge in business, regardless of whether you're in the same business, is what you're saying? Yes, because the presumption is that if you're in business and you receive a confirmation that says, this is what we have agreed to, if that's not what you have agreed to, you're going to do something about it. You're not just going to sit there and do nothing about it once you receive that correspondence. I still don't understand. If we accept your interpretation of this part of the statute, then virtually everyone becomes a merchant. For purposes of written confirmations and things like that, I would agree. Then what's the purpose of the rest of the statute? If you look, the statute... In this day and age, who would not understand how to use an email? Who would not understand how to respond to a letter? I would say no one who's involved in business would qualify as to that. Respectfully, what's the purpose of the rest of the statute? If we give it that broad of a definition, we've abrogated the need for the entire rest of the statute. Because the merchant exception doesn't apply just to the written confirmation. There are exceptions relating to firm offers, confirmatory memorandum, and other things that occur within the UCC that would apply to that. That wouldn't necessarily be the same issue that we're looking at here. There are other sections in the UCC that deal with merchants and have specific application to merchants other than the written confirmation, which is the only thing that we're looking at in this case. How about the specifically manufactured goods exception? I will admit it sounds odd to say that natural gas is a specifically manufactured good. But in this case, what you look at is if you apply the tests that are found, it meets those tests. Specifically, as alleged in our complaint, once my client reached an agreement with the defendant to purchase this gas in the future, my client then immediately goes to the futures market and buys that natural gas that was agreed to. The specific volumes at that specific price to be delivered only in that specific month. That's the only time it can be used. And the only person that can make use of that is somebody who needs that exact same volume of gas delivered at that exact month. So that's a fixed price. That is a fixed price, which is the only thing under consideration here, is those fixed price purchases. There were two winters, one of which was fulfilled. And then the second one, the defendant terminated the contract before we could. If you look at the... So just to make this clear to me, so once he terminated the contract before it was used, could you not use it for someone else? No. Why not? Because it was fixed? It's a fixed price and it can only be sold to somebody who needs that quantity of gas in that month. So, for example, he, the defendant terminated the contract, I believe it was in February. The gas that was to be delivered wasn't to be delivered until beginning the following October. And so they couldn't find anybody else who could? Nobody would pay the rate that was purchased for at that time because the gas market had dropped, which is... Well, what if the gas market had gone up? You could have found a ton of buyers for that, correct? If the gas market had gone up, we could have, but on the flip side, in all likelihood, the defendant wouldn't have canceled it because the gas market would have then been higher and he was in a better position. How does your argument not fall into the language in Colorado carpets about lost markets and past seasons? Because what I would say, Your Honor, is the purpose behind the specially manufactured goods is, if we look in the subsequent case, the Web Court case, they talk about the fact that the purpose lies in the fact that the plaintiff would not have gone out and purchased this unique good if the defendant had not agreed to it. It provides evidence that the contract does exist. Now, as with all specially manufactured goods, my client did sell the gas that's at issue here. They sold it at a salvage sale in the same way you would sell a truckload of widgets that had somebody's name on them that couldn't be used by anybody else. They sold them on the market, open market. They got what they could get for it, but then took a loss, and those are the damages that we're seeking here. Well, that shows that the goods themselves, the gas itself, was not special to your client. It was... Its price was special. The price was special, but the goods, the widget, gas, car, whatever, could be sold to somebody else, maybe at a loss. Oh, yes. It wasn't marketable only to this particular buyer, was it? It was marketable as it was only to this particular buyer from my client. My client can't sell it to another end user, a consumer of the gas. Instead, it has to turn around, sell it back on the open market at which point in time somebody else will then buy it and sell it to whosoever is using or purchasing the gas at that time. Thank you. Thank you. You'll have a chance for a reply. Thank you. Good morning, Your Honors. Good morning. Good morning. On behalf of the Apple League, Ibrahim Shahada. Mr. Shahada is not a merchant, and as you see from the facts of the case, he didn't really know what he was doing. He bought it spot, price went up, it sold him a fixed price, it went down. He knows how to send business correspondence, correct? I believe he does. Actually, I rarely do get an email from him. English is his second language, but I have gotten one from time to time. But my argument is not that he doesn't know how to answer an email, at least before this court. My argument is the arguments that are implied in all of your questions already. As you said, Justice Jorgensen, if I accept counsel's definition, then everybody is a merchant. In fact, the statute could just read merchant means sophisticated businessman, business person. But it doesn't say that. And as Justice Burke astutely pointed out, you have two things here. And you, Justice Shostak, you focused on the word peculiar. And you, Justice Burke, focused on involved in the transaction. And the reading that all you have to do is know how to answer in email is essentially rewriting the statute. And counsel told you, he said, well, he said this definition makes sense for other purposes in the UCC, but essentially it doesn't make any sense here. Well, if it doesn't make sense here, then that's up to the legislature to say, to change the statute of fraud so that the confirmatory memorandum, what that says is that satisfies the writing requirement then to abolish the distinction and make it applicable to everybody. Does comment number two rewrite the statute? I think comment number two is confusing. On the one hand, it talks on one hand about it acknowledges the distinction between, you know, somebody's expertise in this and I don't have the exact language. But, you know, the expert on one hand and the casual and experienced buyer on the other hand. So that's a shorthand way of summarizing, an imprecise way of summarizing the statute. And counsel doesn't argue here. And at the end of that comment it mentions, I believe you alluded to it, even a sophisticated person only if he's acting in a mercantile capacity, not for his own benefit or, you know, not having expertise in the peculiar practices involved in the transaction. So I think it's taking that part of that comment and really just unduly, you know, building your whole case on it. And that's not the, as you pointed out, Justice Burke, we look at the statute first and then we look at the comment. And that's what the cases say. So I think in a sense counsel's made the case easy because he's told you that, he's acknowledged that my client does not deal in these goods. And he's also acknowledged and told you that my client doesn't have any peculiar knowledge of the practices involved in the transaction. So he stakes his whole case on the ability to answer email, which is rewriting the statute. And Justice Shostak, you said how does this case, I believe you asked, how is it different from forms world. It's exactly like forms world. And, in fact, it's interesting. It's so much like forms world. We quote from the opinion on page three of our brief. They, of course, said forms world held itself out as an expert who could vastly reduce magnet banks, forms, and printing costs by careful analysis of usage and need. That's exactly what the plaintiff did in this case. And you can see it in the email that he sends. And if you notice, by the way, the email wasn't to my client. The email was to Duane Lawrence. They allege, I didn't contest because it was pled, that Mr. Lawrence was an agent of my client. So that would be an issue if it had come to that. So there wasn't even an email to my client. But in that email, he says, you know, they held himself out, you know, with special expertise to manage my client's risk while also seeing cost savings versus the utility. So they did exactly what magnet bank did in forms world. They said we're the expert. We'll save you money. And my client hoped that that was true. They didn't have any knowledge of the peculiar practices involved in the transaction. So there was no difference from forms world. On the subject of specially manufactured. I was just going to go there. Yeah, you do. How is it not specially manufactured for him? It was purchased at that set price. There were four criteria that set out for the specially manufactured. How does he not fit? So I don't. So the answer is a fixed price contract that's the only, that the, what makes it unique is price and time. That's what he's saying. Price and time. Where's the uniqueness to my client? In fact, every fixed price. I don't know how it breaks out, how much of their clients sell on spot or how much fixed. But let's say it's 50-50. That means 50% of their contracts are all identical. There's nothing unique to my client. This fixed price contract looks like every other fixed price contract. But I think what his point was is I have a limited market in which I can resell this goods, if you will. Right. I can't just go sell it to you or to the guy in the back row there. I have to sell it back to a purveyor, a very limited amount of purchasers. So why doesn't that make it a specially manufactured good? Because there's no name on it, there's no logo, there's nothing unique about the goods themselves. So the goods have to be unique, not the market. In fact, yes. In fact, he said it himself. In fact, the example he said, it's like any other widgets with a logo. That's what he said. And then you go sell them and they're worth less because the widget itself has been specially manufactured. There's something different about the widget that's reduced its market value. There's nothing different here about the natural gas. No, but the market. That's my question. That's what I'm asking you to respond to. He says the market is different. And because I have such a limited place to sell this particular type of goods, I mean, I just can't start up. Like a food truck on the corner, I can't sell natural gas that way. I have to go through either to the end user for whom I have a contract or I have to sell it back to one entity. So why doesn't that matter? Because when I go to the bakery and I buy day-old donuts, they're not specially manufactured for me. They're just the price changed. The market changed. If time and price were defining characteristics of specially manufactured, then, in effect, the only thing that wouldn't be specially manufactured is a market, which I don't know of any, where the price never changes. It's always the same price no matter what. Can't think of any market like that. Every market that calls for delivery at a certain time, prices change and they're subject to variation. So how do you preclude this from occurring? Like make a written contract, perhaps? That would be, in fact, they knew how to do that in the prior years. They had, they alleged in the complaint, they had written contracts. The very fact that they didn't have a written contract is strong evidence that there was no agreement. That's not the issue for Your Honors, whether there is an agreement or not. It's just that they don't even get to, we don't get to the ballot. He said, she said, unless they have a sufficient writing, which if you're a merchant, can be something more than signed by both parties. But if you're not, it has to be signed by both parties, which we don't have. Or it has to fall into one of these exceptions. Or the other exceptions. Thank you. Questions? Thank you very much. Thank you, Counselor. Do you wish to reply? Yes. Thank you. I first want to address a couple of misstatements with respect to whom the email was sent. If you look at Exhibits 3 and 4 of the complaint, you'll see that the email in Exhibit 3 was sent to the defendant specifically. That's found in Appendix Page 28. And the second email, confirmation email that was sent, which is found in Appendix Page 36, was sent to somebody within his organization, but the defendant himself was personally copied on that as a CC as well. So there's no question it was sent to the defendant twice. And also point out that in the First Amendment complaint, we specifically allege that over their course of viewing, the defendant purchased natural gas from plaintiffs, both on the spot market and on the fixed price market. And when he purchased natural gas on a fixed price position in the past, he purchased it both under the terms of a written contract and under the terms of an oral contract. And that's specifically pleaded in our complaint. With respect to the comment number two, and almost everybody being a merchant, I would point out that comment number two owns that. It specifically notes that under this analysis, almost everyone is a merchant because everyone in the business world should be able to exchange and engage in business correspondence. With respect to the specially manufactured goods, counsel spent a lot of time talking about price and time, but there's a third component there, which is volume. My client didn't just buy natural gas generically at some point in time in the future. It bought a specific amount of natural gas to be delivered to a specific address at a specific month at that point in time in the future. And if we look at the specially manufactured goods exception that's found in the statute, what it talks about is the key distinguishing factor is you cannot resell the item in the ordinary course of the business. That is different. If you can resell it to somebody else in the ordinary course to somebody else who's your regular client or a potential client, then that's one thing. But if you cannot, that's when you go into the realm of the specially manufactured good, and that's what we have in this situation. It cannot be resold to another one of my client's clients. So it can be resold. It might be resold at a less price, but it can't be resold, correct? It can only be resold to the market, not to the end consumer, which would be in the ordinary course of my client's business would be selling to the end consumer, not to the natural gas market as a whole. So that's when we get outside of the ordinary course of business is we're not selling it to the consumer of the gas at that point. It would be equivalent to taking your widgets to the junkyard and getting salvage value or to the recycler and getting salvage value from them. That's what happens here. We don't sell them to somebody who's ultimately going to use them. We sell them to somebody else who then turns around and resells them. Resells them. So that would be what takes it outside the ordinary course, which is the emphasis of that exception to the statute of frauds. Well, the emphasis is the goods, correct? I mean, the cases talk about the emphasis being on the nature of the goods themselves. Right. Not the market, not where you're going to resell them. None of the things you're talking about. The focus is on let's look at these goods and see if they're specially made. Right, but the question is why can these goods no longer be sold to an end customer, and that's because of their unique nature, which is X number of volumes. Well, there's nothing in the statute that talks about being sold to an end customer. Whether it's sold in the ordinary course of business to a dealer who then resells them to an end customer. You're talking about selling them to a middleman, correct? Well, it would be selling them back to the originating market. So it would actually not be a middleman. It would be, for example, Shell, who generates natural gas, and that would be somebody my client would buy from to purchase gas, then to resell it. We would be reselling the gas back to Shell, not back to somebody who's going to use it. But your junkyard analogy doesn't really hold water if the price of the gas had gone the opposite direction. I'm just saying, if the defendant had canceled the contract and the price had gone the opposite direction, you guys would be glad to get it back and resell it to Shell. We would resell it in the same way, not in the ordinary course of business, to the original seller. We just wouldn't have any damages. That doesn't mean that there wasn't a contract that was breached. It just means we don't have damages. Right, but I mean, the junkyard analogy is rarely can you sell something to a junkyard and get a profit. Rarely, yes, but I would say it would be no more rare than somebody would cancel a contract to buy more expensive gas than what they already had. If they went out of business or something, they might want to keep the contract. Thank you. Thank you very much. We'll be in recess until our next case at 11-3.